# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 25, 2012

## STATE OF TENNESSEE v. DUVALE VASHAWN PRUITT

**Direct Appeal from the Circuit Court for Sullivan County**
**No. S41, 819     Robert H. Montgomery, Jr. Judge**

---

**No. E2011-01995-CCA-R3-CD - Filed October 8, 2012**

---

In this procedurally complex case, the Defendant, Duvale Vashawn Pruitt, pled nolo contendere to multiple drug-related charges, and the trial court sentenced him to an effective sentence of ten years of probation. The Defendant's probation officer filed two probation violation warrants, one in September and another in October of 2007. After a hearing, the trial court ordered the Defendant to serve 90 days in jail and then start his probationary sentence again. In February 2011, the Defendant's probation officer filed a third probation violation warrant based upon the Defendant's possession of a switchblade knife at a courthouse, and the trial court issued a warrant for the Defendant's arrest. After a hearing, the trial court revoked the Defendant's probation and ordered him to serve his sentence of ten years at 30% in the Tennessee Department of Correction. It is from this judgment that the Defendant now appeals.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROGER A. PAGE, JJ., joined.

Stephen M. Wallace, Blountville, Tennessee, for the appellant, Duvale Vashawn Pruitt.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Barry Staubus, District Attorney General; and J. Lewis Combs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Background

This case arises out of the Defendant's pleas of nolo contendere to several drug-related charges. In this case, the Defendant entered a plea of nolo contendre, on January 4, 2007, to possession of .5 grams or more of cocaine with the intent to sell or deliver. The trial court sentenced him to ten years for this conviction, ordering him to serve the sentence on probation. On the same day, in another case, the Defendant pled nolo contendere to possession of a Schedule IV drug, possession of legend drugs, possession of marijuana, possession of drug paraphernalia, and criminal impersonation. The trial court sentenced the Defendant to an effective sentence of eleven months and twenty-nine days for those five convictions, and it ordered that the sentences be served concurrently with the sentence in the present case. The judgments were entered on January 18, 2007.

On September 25, 2007, the Defendant's probation officer filed a probation violation warrant, alleging that the Petitioner had violated two rules of probation. The warrant alleged that the Petitioner failed to report to his probation officer, that he had changed his residence, and that he had not reported as instructed on two occasions. The trial court issued a warrant for the Defendant's arrest. On October 25, 2007, the Defendant's probation officer filed a second probation violation warrant alleging that the Defendant had violated his probation by failing to report as instructed on two more occasions. The trial court issued a second warrant for the Defendant's arrest.

The trial court held a hearing on the allegations that the Defendant had violated his probation. After a hearing on January 9, 2009, the trial court issued an order finding that the Defendant had violated his probation by changing his residence without permission and by absconding. The trial court concluded that the Defendant did not present a threat to the community, so it ordered that his probation be reinstated after serving 90 days in jail. The trial court also extended the Defendant's probation until October 25, 2017.

On February 25, 2011, the Defendant's probation officer filed a probation violation report alleging the following:

> **Rule # 1: "I will obey the laws of the United States, or any State in which I may be, as well as any municipal ordinances."**
> In that, on or about, February 15, 2011 Sullivan County Sheriff's Deputy Alan Hill made oath that the offender committed the offense of Possession of Prohibited Weapons when he brought a switchblade knife into the courthouse.
> **Rule #2: "I will report all arrests, including traffic violations immediately, regardless of the outcome, to my Probation Officer/Counselor, within 72 hours."**

In that the offender failed to report his arrest and marked "no" to the question "were you arrested or questioned by the police since you last reported" on his probation reporting form an hour after his arrest.

**Rule #3: "I will not receive, own, possess, ship or transport any firearms, ammunition or illegal weapons.**

In that, on or about, February 15, 2011 the offender had possession of an illegal weapon, specifically a switchblade knife.

The trial court issued a warrant for the Defendant's arrest, and the trial court held a hearing on the allegation wherein the following evidence was presented: Sara Hodges testified that her responsibilities included supervising the Defendant's probation. As part of their supervision, probationers are given a reporting form when they report monthly. The form specifically asks, "Were you arrested or questioned by the police since you last reported?" The Defendant filled out such a form on February 15, 2011, when he reported at 9:15 a.m., and he checked "no" to the question about being arrested or questioned by police. When Hodges and the Defendant spoke that day, the Defendant never indicated that he had been arrested or questioned by police.

Hodges said that, the following day, a probation officer from a different office informed her that the Defendant had been charged with an offense the previous day. Hodges learned that the Defendant had been charged with "going armed" an hour before he reported.

On cross-examination, Hodges testified that the Defendant reported to her on a regular basis. She said that, as far as she knew, he had followed all of the rules of supervision since she began supervising him in 2008. She agreed that, at the time the Defendant was arrested, he was at the courthouse to pay some court costs associated with his conviction.

On redirect examination, Hodges said the Defendant had been on "max supervision." Further, of the "numerous times" she checked to ensure he was at home, she only found him at home on one occasion.

Officer Allen Hill testified that he worked at the security entrance to the courthouse. His responsibilities included searching and monitoring people entering the courthouse to ensure the safety of the people inside. On February 15, 2011, Officer Hill was training a new officer, Officer David Buck, when the Defendant came into the courthouse. The Defendant voluntarily handed a knife to Officer Buck and said, "This is all I have." Officer Buck looked at the knife and then said to Officer Hill, "This is a switchblade." The officers used an electronic wand to ensure the Defendant did not possess any other weapons. Officer Hill then informed the Defendant that a switchblade was an illegal and prohibited weapon and that he was going to have to write a citation to the Defendant for possessing the weapon.

Officer Hill testified that the Defendant said he had purchased the switchblade over the weekend at a flea market, insisting the receipt was in his car. The officer told the Defendant that he did not have to go get the receipt because it was illegal for the Defendant to have possession of the switchblade. The officer said he tested the switchblade, it was spring activated, and it operated properly. Officer Hill testified that the Defendant told him that he did not realize that the switchblade was a prohibited weapon.

On cross-examination, Officer Hill testified that the Defendant never told him that the jacket the Defendant wore belonged to someone else. The officer confirmed that the Defendant voluntarily gave him the weapon.

On redirect examination, Officer Hill testified that the Defendant was alone that day in the courthouse. He said he prepared a citation, a copy of which he brought to court. The citation noted that the officer issued it to the Defendant at 8:15 a.m. on February 15, 2011.

On re-cross-examination, Officer Hill agreed that the Defendant asked him why possessing the weapon was illegal when a switchblade could be purchased "at the Dollar Store." The officer said he did not have a response for the Defendant.

The Defendant testified that he was, at the time of the hearing, thirty-five years old and a paraplegic. He stated that he has been limited to a wheelchair for mobility for sixteen years. The Defendant said he came to the courthouse at 8:05 a.m. to pay his probation fees and his court costs and fines, noting that he was current with all the fees he owed. He agreed that he had complied with all the conditions of his probation. He said that his probation officer had been to his old house but that she had not been to his new house.

The Defendant recalled the circumstances of this offense, stating that he drove himself to the courthouse that day in his own vehicle. He recalled that it was cold and raining, so he put on a jacket that was in his car, which belonged to his friend, Joshua Napier. The Defendant said that, when he entered the courthouse, he reached for his phone in the jacket pocket. When he did so, he realized that there was a knife in the pocket of the jacket, so he gave the knife to the officers. The knife, the Defendant said, belonged to Joshua Napier. The Defendant said he did not recall telling the officer anything about a flea market. He then said that he did not know the item he handed to the officer was a knife, saying "I didn't even know the knife was in this" and "I didn't know nothing about the knife. I just handed it to him when I felt it in the pocket because I thought it was my phone. I actually thought it was my cell phone."

The Defendant said that, the day before the probation violation hearing, he went to court on the citation, and the trial court dismissed that charge. The Defendant further noted

-4-

that he had suffered health problems in jail. He noted that, in jail, they did not adequately change his colostomy bag and that they also did not appropriately treat the bedsores that occurred as a result of his confinement to a wheelchair.

The Defendant said he was familiar with Officer Hill before this incident because the officer had helped transport him on multiple occasions. The Defendant said that he told Officer Hill that the knife was not his and that he had never seen it before that day. The Defendant said he did not buy the knife and that he did not tell the officer he bought the knife at the flea market.

On redirect examination, the Defendant testified that he filled out the box indicating "no" as to the question of whether he had any new arrests because he did not think his citation counted as an arrest. He said that, previously, he had been cited for his car windows being tinted too dark. He testified that he had reported the window tint violation on his form, although his probation officer told him that he did not have to report that violation. The Defendant said that he assumed the citation in this case was similar to the window tint violation.

Based upon this evidence, the trial court accredited Officer Hill's testimony and found that the Defendant had violated his probation. He set a later date for the parties to present evidence for the trial court to consider in determining the disposition of the probation violation. The Defendant was to stay on probation until the disposition.

The Defendant failed to appear at that the disposition hearing, and the trial court issued a capias for the Defendant's arrest. The trial court noted that the Defendant's probation officer filed another probation violation report, indicating that the Defendant had been charged with federal crimes. The trial court noted that the Defendant was not in court because he was in federal custody. The trial court then ordered the Defendant, in his absence, to serve the balance of his sentence in confinement. The trial court dismissed with prejudice the probation violation report regarding the Defendant's federal charges.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it revoked his probation based upon his failure to report his citation for the switchblade to his probation officer. He argues that his failure was not willful in light of the fact that he did not understand that he was required to report the issuance of criminal citations as well as new arrests. He notes that the monthly reporting form asks, "Were you arrested or questioned by the Police since you last reported" and makes no reference to citations. The State responds that the trial court properly revoked the Defendant's probation. The State notes that the

Defendant's Probation Supervision Order, which was made an exhibit, imposes upon the Defendant a duty to obey the law and report arrests, traffic violations, and traffic citations. This would, the State asserts, clearly include reporting a citation for possessing an illegal weapon.

In Tennessee, the procedure for revocation of probation is covered in Tennessee Code Annotated section 40-35-311. The statute provides as follows:

> Whenever it comes to the attention of the trial judge that any defendant, who has been released upon suspension of sentence, has been guilty of any breach of the laws of this State or has violated the conditions of probation, the trial judge shall have the power to cause to be issued under such trial judge's hand a warrant for the arrest of such defendant as in any other criminal case. Regardless of whether the defendant is on probation for a misdemeanor or a felony, or whether the warrant is issued by a general sessions court judge or the judge of a court of record, such warrant may be executed by a probation officer or any peace officer of the county in which the probationer is found.

T.C.A. § 40-35-311(a) (2010).

The essential question facing the trial court in a probation revocation proceeding is whether the trial court's determination will serve the ends of justice and the best interests of both the public and the probationer. *See Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956). When a trial court determines by a preponderance of the evidence that a probationer has violated the conditions of his or her probation, the trial court has the authority to revoke probation. T.C.A. § 40-35-311(e) (2010). Upon finding that the defendant has violated the conditions of probation, the trial court may revoke the probation and either: (1) order incarceration; (2) order the original probationary period to commence anew; or (3) extend the remaining probationary period for up to two additional years. *State v. Hunter*, 1 S.W.3d 643, 644 (Tenn. 1999); *see* T.C.A. §§ 40-35-308, -310, -311 (2010). The defendant has the right to appeal the revocation of his probation and entry of his original sentence. T.C.A. § 40-35-311(e)(2) (2010). After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." T.C.A. § 40-35-311(e)(1) (2010); *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in confinement). Furthermore, when probation is revoked, the trial court may order "the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension . . . ." T.C.A. § 40-35-310(a) (2010).

The decision to revoke probation is within the sound discretion of the trial judge. *State v. Kendrick*, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). This Court will uphold a trial court's judgment to revoke probation unless the trial court abused its discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, the record must be void of any substantial evidence that would support the trial court's decision that a violation of the conditions of probation occurred. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

We conclude that the trial court did not abuse its discretion when it revoked the Defendant's probation. Rule 3 of the Defendant's Probation Supervision Order prohibited him from receiving, owning, possessing, shipping or transporting any . . . illegal weapon. Tennessee Code Annotated section 39-17-1302(a)(7), in turn, makes it illegal to intentionally or knowingly possess a "switchblade knife." Officer Hill informed the Defendant that possession of the switchblade was against the law and that he was going to have to issue him a citation for carrying the weapon. The citation, titled "Misdemeanor Citation" charged the Defendant with possessing a "prohibited weapon." Although the citation issued to the Defendant does not equate to an arrest required to be reported to his probation officer pursuant to Rule 2 of the Defendant's Probation Supervision Order, the possession of the "switchblade knife" serves as a basis for the revocation of the Defendant's probation pursuant to Rule 3.

Finally, the Defendant inaccurately represented on his Monthly Reporting Form that he had not been arrested or questioned by the police since he last reported. Although he was not arrested, he was questioned by law enforcement officers about the switchblade knife, and the questioning occurred approximately one hour before the Defendant completed the Monthly Reporting Form. In our view, this misrepresentation by the Defendant would also serve as a basis for the revocation of the Defendant's probation pursuant to Rule 6 of the Defendant's Probation Supervision Order, which requires truthful reporting. The record evinces, however, that the Defendant's probation officer did not allege that the Defendant violated Rule 6 of his probation. In any event, we affirm the trial court's judgment on the basis of the Defendant's violation of Rule 3.

### III. Conclusion

Based on the above mentioned reasoning and authorities, we affirm the trial court's judgment revoking the Defendant's probation for violating Rule 3 of the Defendant's Probation Supervision Order.

_____
ROBERT W. WEDEMEYER, JUDGE